Justice Alito,
concurring.
I join the opinion of the Court. Unbeknownst to peti­tioner, he was effectively deprived of legal representation due to the combined effect of no fewer than eight unfortu­nate events: (1) the departure from their law firm of the two young lawyers who appeared as counsel of record in his state postconviction proceeding; (2) the acceptance by these two attorneys of new employment that precluded them from con­tinuing to represent him; (3) their failure to notify petitioner of their new situation; (4) their failure to withdraw as his counsel of record; (5) the apparent failure of the firm that they left to monitor the status of petitioner’s case when these attorneys departed; (6) when notice of the decision denying petitioner’s request for state postconviction relief was re­ceived in that firm’s offices, the failure of the firm’s mailroom to route that important communication to either another member of the firm or to the departed attorneys’ new ad­dresses; (7) the failure of the clerk’s office to take any action when the envelope containing that notice came back un­opened; and (8) local counsel’s very limited conception of the role that he was obligated to play in petitioner’s representa­tion. Under these unique circumstances, I agree that peti­tioner’s attorneys effectively abandoned him and that this *291 abandonment was a “cause” that is sufficient to overcome petitioner’s procedural default.
In an effort to obtain relief for his client, petitioner’s coun­sel in the case now before us cast blame for what occurred on Alabama’s system of providing legal representation for capital defendants at trial and in state collateral proceedings. See Brief for Petitioner 3-6. But whatever may be said about Alabama’s system, I do not think that Alabama’s sys­tem had much if anything to do with petitioner’s misfortune. The quality of petitioner’s representation at trial obviously played no role in the failure to meet the deadline for filing his notice of appeal from the denial of his state postconvic­tion petition. Nor do I see any important connection be­tween what happened in this case and Alabama’s system for providing representation for prisoners who are sentenced to death and who wish to petition the state courts for collateral relief. Unlike other States, Alabama relies on attorneys who volunteer to represent these prisoners pro bono, and we are told that most of these volunteers work for large, out-­of-state firms. Id., at 4. Petitioner’s brief states that the Alabama system had “a direct bearing on the events giving rise ... to the procedural default at issue,” id., at 3, but a similar combination of untoward events could have occurred if petitioner had been represented by Alabama attorneys who were appointed by the court and paid for with state funds. The firm whose lawyers represented petitioner pro bono is one of the country’s most prestigious and expensive, and I have little doubt that the vast majority of criminal defendants would think that they had won the lottery if they were given the opportunity to be represented by attorneys from such a firm. See id., at 9 (stating that it “seemed as though Maples had won the lottery when two attorneys working at an elite New York law firm . . . agreed to repre­sent Maples pro bono”).
What occurred here was not a predictable consequence of the Alabama system but a veritable perfect storm of misfor­ *292 tune, a most unlikely combination of events that, without no­tice, effectively deprived petitioner of legal representation. Under these unique circumstances, I agree that petitioner’s procedural default is overcome.